OPINION
{¶ 1} Defendant, William Lane, was convicted on his negotiated pleas of no contest of attempted illegal assembly or possession of chemicals for the manufacture of drugs, R.C. 2923.02(A) and 2925.041, possession of criminal tools, R.C. *Page 2 2923.24(A), and two counts of possession of drugs, R.C. 2925.11(A). The trial court sentenced Defendant to concurrent prison terms of nine months on each offense. Defendant filed a timely notice of appeal
ASSIGNMENT OF ERROR
 {¶ 2} "WHERE AN AFFIDAVIT SUPPORTING ISSUANCE OF A SEARCH WARRANT IS SUPPORTED BY HEARSAY INFORMATION PROVIDED BY TWO `CONFIDENTIAL INFORMANTS,' AND THE AFFIDAVIT FAILS TO STATE THE VERACITY OF EITHER `CONFIDENTIAL INFORMANT,' ANY STEPS TAKEN TO CORROBORATE INFORMATION PROVIDED BY THE TWO `CONFIDENTIAL INFORMANTS,' AND THE REMAINING INFORMATION IN THE AFFIDAVIT FAILS TO DEMONSTRATE PROBABLE CAUSE TO SEARCH, A TRIAL JUDGE ERRS IN OVERRULING A MOTION TO SUPPRESS."
 {¶ 3} The criminal charges of which Defendant was convicted were founded on evidence law enforcement authorities seized from Defendant's home during a search conducted pursuant to a warrant. Lane moved pursuant to Crim.R. 12(C)(3) to suppress the evidence police seized, arguing that the warrant was issued without the showing of probable cause that the Fourth Amendment requires. Specifically, Defendant contended, and contends on appeal, that the affidavit submitted in support of the application for a warrant was insufficient in that regard.
 {¶ 4} "1. In determining the sufficiency of probable cause *Page 3 
in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (Illinois v. Gates [1983], 462 U.S. 213, 238-239, 103 S.Ct. 2317, 2332,76 L.Ed.2d 527 followed.)
 {¶ 5} "2. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting ade novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (Illinois v. Gates *Page 4 
[1983], 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 followed.)
 {¶ 6} "3. The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. (United States v.Leon [1984], 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, followed.)"State v. George (1989), 45 Ohio St.3d 325, Syllabus by the Court.
 {¶ 7} The affidavit in issue is that of Detective David Tidd of the Greene County Sheriff's Office, who is also a member of the A.C.E. drug task force. After relating his knowledge and experience in drug investigations, Tidd set out specific allegations of criminal activity in support of an application for a warrant to search Defendant's residence. Tidd's affidavit is dated March 15, 2006. The warrant issued and the search was performed on that same date.
 {¶ 8} First, Tidd averred that on November 10, 2005, an informant, identified as CS#1, had stated that Defendant and another man were manufacturing the illegal drug methamphetamine at several locations in Greene County, that both were involved in thefts, and each had stolen property at their residences. Tidd also averred that, on the same date as his affidavit, *Page 5 
Defendant had offered to procure methamphetamine for CS#1 from another drug dealer.
 {¶ 9} Second, Tidd averred that another informant, identified as CS#2, told police on March 14, 2006 that Defendant had a lab for the manufacture of methamphetamine at his residence at 755 Heifner Road, in Greene County, and that when CS#2 stood adjacent to the property he detected the odor of anhydrous ammonia, which is used in the production of methamphetamine.
 {¶ 10} Third, Detective Tidd averred the following concerning his own observations:
 {¶ 11} "5. On March 14, 2005 the Affiant and Det. Charles Bell, Special Agent for the State of Ohio Bureau of Criminal Investigation and Identification, walked on property that borders 755 Heifner Road. This property on which the Affiant and Det. Bell were standing is owned by the Greene County Commission and maintained by Green County Parks and Recreation. The Affiant and Det. Bell could see in plain view from this vantage point two fire extinguisher cylinders, three plastic multi-gallon containers, three fresh burn piles, one plastic milk carton containing funnels and plastic ware. The Affiant knows from past training and experience that all of these items are used in the manufacture of methamphetamine. In addition, *Page 6 
the Affiant has participated in several clandestine methamphetamine investigations where burn piles are utilized to burn or destroy potential evidence generated from waste products used during manufacturing of methamphetamine.
 {¶ 12} "6. On March 15, 2006 the Affiant and Det. Bell conducted surveillance at 755 Heifner Road and observed a white male with long black hair that (sic) was tall and slender exit the motor home. This subject left the door open to the motor home and had the rear window of the motor home open.
 {¶ 13} "7. Based upon the above facts and beliefs, and in my experience and in the experience of other members of the Green County A.C.E. Task Force, traffickers in controlled substances frequently have weapons in or near areas where narcotic sales are made. Additionally they often use remote locations, and/or safes to store drugs and U.S. currency derived from selling illicit drugs. They frequently use portable pagers, cellular telephones, and telephone answering machines as a means of contacting one another. Traffickers also frequently have ledgers or books indicating sources, amounts and sales. Cash is also frequently found in larger than usual amounts. Video and Audio surveillance equipment is often used to monitor movement of people and vehicles around where sales are made. Affiant requests that a Warrant be *Page 7 
issued to the proper police authority authorizing a personal search of the above described residence and vehicles for items and things named, and for a search of the described place(s) and things for said items of property; and, if said items of property or any part thereof, are found in the place(s) or in things described, authority is requested to seize said items of property which may be found."
 {¶ 14} Defendant argues that the averments in Detective Tidd's affidavit fail to portray probable cause to believe that evidence of criminal activity would be found in a search of Defendant's residence. Defendant points out that the information provided by CS#1 on November 10, 2005, was over four months old when Detective Tidd related it in his affidavit dated March 15, 2006, and therefore that the information was too "stale" to show what articles were presently there. Defendant also argues that, more importantly, the affidavit contains no averment concerning the two informants from which the magistrate issuing the warrant could have concluded that they are credible and the information each provided is reliable. Aguilar v. Texas (1964), 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States (1969),393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.
 {¶ 15} On its face, an affidavit on which a warrant issues *Page 8 
must contain facts from which the magistrate may find that probable cause exists. When those facts involve information provided by unidentified third persons, the affiant typically avers that the "informant" has in the past provided reliable information which led to arrests and convictions arising out of the criminal activity the informant related. Absent that showing, there is no basis for the magistrate to rely on the information provided, and probable cause is not shown. Aguilar; Spinelli.
 {¶ 16} The Aguilar/Spinelli test was subsequently modified byIllinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, which stressed that the test for probable cause is determined from the totality of the circumstances. In Gates, police obtained facts that corroborated information provided by an anonymous tipster: information concerning the defendants' travel that was part of their criminal conduct as the tip described it. The Gates court held that the police corroboration, together with the substance of the tip, presented the "fair probability" of criminal activity at the location to be searched that probable cause requires. Id.
 {¶ 17} The totality of the circumstances before the issuing magistrate in the present case comfortably fits the Gates analysis. Detective Tidd did not aver that CS#1 or CS#1 had *Page 9 
provided reliable information in the past. However, the basis of their knowledge of the criminal activity each related was clear from the information they provided. Further, the reliability of that information, including the arguably "stale" information CS#1 had provided, was demonstrated through its corroboration by the observations Detective Tidd stated he had made on that day. Together those matters portray a fair probability that evidence of criminal activity would be found in the place to be searched. Probable cause for the warrant on which the search was performed was therefore shown.
 {¶ 18} The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1