OPINION
{¶ 1} Valerie Wilcoxson appeals from her conviction and sentence on a charge of fifth-degree felony drug trafficking in violation of R.C. 2925.03(A)(1).
 {¶ 2} Wilcoxson advances four assignments of error on appeal. First, she contends her conviction is against the manifest weight of the evidence presented at trial. *Page 2 
Second, she claims the State presented legally insufficient evidence to support her conviction. Third, she argues that the trial court erred in failing to declare a mistrial due to prosecutorial misconduct. Fourth, she contends the trial court erred in admitting testimony from an expert witness who identified a State's exhibit as being .03 grams of crack cocaine.
 {¶ 3} The present appeal involves a drug purchase made by Dayton police sergeant Mark Spiers on August 25, 2006. While wearing plain clothes and driving an unmarked pick-up truck, Spiers observed Wilcoxson and a companion, Delarria McDade, outside an apartment building at 905 Neal Avenue. McDade was standing near a traffic barricade in the street, and Wilcoxson was sitting behind him. When McDade saw Spires, he threw his hands up and started yelling to attract Spires' attention. Wilcoxson then stood and motioned for Spires to approach the barricade.
 {¶ 4} Spires drove past Wilcoxson and McDade while other detectives positioned themselves to conduct surveillance. He then returned to an alley near the barricade. Wilcoxson approached the driver's side of his truck and asked what Spires wanted. Spires indicated that he wanted "a twenty," using street language for a small quantity of cocaine. Wilcoxson replied, "We can take care of that." By then, McDade had approached the passenger's side of the truck. He too asked what Spires wanted. Spires again requested "a twenty." McDade said, "okay," and instructed Wilcoxson to step away from the truck and to keep an eye out. Wilcoxson responded by walking to the mouth of the alley, where she began looking up and down the street.
 {¶ 5} Spires subsequently gave McDade twenty dollars, and McDade took the money to a house on the corner of the alley. While Spires waited for McDade to return, *Page 3 
Wilcoxson approached the passenger's side of the truck. Spires asked where McDade had gone, explaining that he did not want to get "ripped off." Wilcoxson replied: "Relax, we're not going to rip you off. He'll be right back." She then asked Spires whether he wanted to "do anything." Based on other remarks Wilcoxson had made about "dating" people near North Main Street, a high prostitution area, Spires understood that she was propositioning him for sex. Spires responded affirmatively, and she entered his truck.
 {¶ 6} At that point, McDade returned with a small quantity of crack cocaine. Because it was broken into two pieces, Spires suspected that McDade had "pinched" some for himself. Spires nevertheless accepted the drugs and offered to drop McDade off somewhere. Wilcoxson responded that she and McDade were "together" and that he would be coming along with them. Spires then cancelled his "date" with her. Wilcoxson and McDade exited the truck and were arrested by other officers, one of whom found a small piece of crack cocaine in McDade's pocket.
 {¶ 7} Based on the foregoing incident, Wilcoxson was charged with one count of trafficking in crack cocaine. At trial, the State sought to prove that Wilcoxson had acted as an aider and abetter. A jury found her guilty, and the trial court imposed an eleven-month prison sentence. This timely appeal followed.
 {¶ 8} In her first two assignments of error, Wilcoxson challenges the weight and sufficiency of the evidence to support her conviction. She argues that all of her words and actions were entirely innocent, were ambiguous, or were related to soliciting prostitution, an act for which she was not prosecuted. Wilcoxson also stresses that she never personally offered to sell Spires drugs, never touched the drugs, and never handled the money. *Page 4 
 {¶ 9} Upon review, we find Wilcoxson's arguments to be unpersuasive. When a defendant challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 10} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `"clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 11} With the foregoing standards in mind, we conclude that Wilcoxson's conviction is based on legally sufficient evidence and is not against the manifest weight *Page 5 
of the evidence. Viewing the evidence in a light most favorable to the prosecution, the jury reasonably could have found Wilcoxson guilty as an aider and abetter. The crime at issue required proof of a sale or offer to sell crack cocaine. R.C. 2925.03(A)(1). To establish complicity by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson,93 Ohio St.3d 240, 2001-Ohio-1336, syllabus.
 {¶ 12} The record contains sufficient evidence to support a finding that Wilcoxson, acting with the requisite intent, aided and abetted McDade in the sale of crack cocaine. She assisted McDade in waving Spires down and asking what he wanted. She then told Spires, "We can take care of that," when he requested "a twenty." She also assisted McDade by acting as a lookout and by reassuring Spires when he expressed concern about being "ripped off." This evidence is sufficient to establish that Wilcoxson was actively involved in the drug transaction. Such a conclusion also is not against the manifest weight of the evidence. Despite Wilcoxson's argument that her words and actions were unrelated to drug trafficking, the jury reasonably could have found otherwise. The evidence does not weigh heavily against Wilcoxson's conviction, and the jury's verdict did not create a manifest miscarriage of justice. Accordingly, we overrule her first two assignments of error.
 {¶ 13} In her third assignment of error, Wilcoxson argues that the trial court erred in failing to declare a mistrial due to prosecutorial misconduct. This argument concerns the prosecutor's act of eliciting testimony from Spires about two crack pipes being found *Page 6 
in Wilcoxson's possession when she was arrested.[1] After Spires testified that detective David House found the crack pipes on Wilcoxson, defense counsel moved for a sidebar. During that discussion, the prosecutor revealed that House was unavailable and would not be testifying. Defense counsel responded by raising a hearsay objection and moving for a mistrial. The trial court sustained the objection but refused to grant a mistrial. Wilcoxson contends the prosecutor engaged in misconduct by eliciting hearsay testimony from Spires about the crack pipes. She further argues that the testimony prejudiced her right to a fair trial despite the trial court sustaining her objection.
 {¶ 14} The decision whether to grant a mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059. An abuse of discretion means more than an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v.Adams (1980), 62 Ohio St.2d 151. Having reviewed the record, we do not find that the trial court abused its discretion in overruling Wilcoxson's motion for a mistrial. The trial court reasonably could have found that Spires' isolated reference to the crack pipes did not deprive Wilcoxson of a fair trial. The lack of prejudice becomes more apparent in the context of the entire case, which involved Wilcoxson, an admitted drug addict who supports her drug habit through prostitution, hanging out with McDade, a drug dealer, in an area known for drug trafficking. Under these circumstances, the fact that Wilcoxson possessed crack pipes *Page 7 
cannot have been too surprising to the jury or too prejudicial to her defense.
 {¶ 15} In reaching the foregoing conclusion, we find the present case readily distinguishable from State v. Willard (2001),144 Ohio App.3d 767, upon which Wilcoxson relies. In Willard, the prosecutor engaged in multiple acts of serious m isconduct. These acts included falsely suggesting without any evidentiary support that social workers and detectives believed a child sexual abuse victim's allegations, appealing to the jury's sense of outrage, denigrating defense counsel for cross examining the child, and mischaracterizing expert testimony. The Tenth District held that the prosecutor's improper comments, when considered cumulatively, deprived the defendant of a fair trial. The potential prejudice to Wilcoxson as a result of Spires' hearsay testimony is not comparable to the prejudice caused by the cumulative effect of the prosecutor's improper remarks in Willard. The third assignment of error is overruled.
 {¶ 16} In her fourth assignment of error, Wilcoxson contends the trial court erred in admitting testimony from Miami Valley Regional Crime Lab chemist Brooke Ehlers, who identified State's Exhibit 1B as being .03 grams of crack cocaine.
 {¶ 17} At trial, Spiers testified that Exhibit 1B was a piece of crack cocaine found in McDade's possession. Detective Dennis Murphy, who actually removed the substance from McDade's pocket, also identified Exhibit 1B as being the crack cocaine he found in McDade's possession. Murphy admitted, however, that he had failed to initial the envelope into which he placed the crack cocaine. On cross examination, Murphy stated that the crack cocaine in Exhibit 1B looked like the piece he had found in McDade's possession. He testified that the size was right and that it had a similar appearance. He acknowledged, however, that he could not be absolutely certain it was *Page 8 
the same piece he had taken from McDade.
 {¶ 18} Ehlers later sought to testify concerning her laboratory analysis of Exhibit 1B. Defense counsel objected on the basis that Murphy had failed to initial the envelope containing the crack cocaine taken from McDade. Defense counsel also pointed out Murphy's inability to state with certainty that the crack cocaine in Exhibit 1B was the same piece he had found in McDade's possession. The trial court overruled the objection, allowing Ehlers to testify that Exhibit 1B was .03 grams of crack cocaine. Wilcoxson contends the trial court erred in so ruling, absent a proper chain of custody or Murphy's ability to positively identify Exhibit 1B.
 {¶ 19} Upon review, we are unpersuaded by Wilcoxson's argument. Although Murphy failed to initial the envelope containing Exhibit 1B or to identify the piece of crack cocaine with certainty, we believe it was sufficiently identified for purposes of admissibility. The record reveals that State's Exhibit 1 was a large manila envelope. At trial, Spires identified evidence tape on Exhibit 1 bearing his initials. Inside that large envelope were two smaller envelopes. Spires testified that the first smaller envelope, Exhibit 1 A, held the two pieces of crack cocaine he had purchased from McDade. Spires also testified, without any objection, that the second smaller envelope, Exhibit 1B, contained the single piece of crack cocaine Murphy had found in McDade's possession. Spires further testified that he had field-tested the crack cocaine in the two smaller envelopes before the entire package was placed in a secure property room. For her part, Ehlers also identified Exhibit 1 based on the presence of her initials and a bar code with the words "Miami Valley Regional Crime Laboratory" and "Dayton Police Department." Ehlers similarly identified Exhibits 1A and 1B through her initials and the presence of *Page 9 
various numbers and codes.
 {¶ 20} Although Wilcoxson now challenges Spires' basis for knowing that Exhibit 1B contained the crack cocaine detective Murphy found in McDade's possession, she raised no such objection during Spires' testimony. Based on Spires' uncontroverted testimony identifying Exhibit 1B as the crack cocaine found on McDade, the presence of Spires' initials on Exhibit 1, and Ehlers' subsequent identification testimony, we reject Wilcoxson's argument that the trial court abused its discretion in admitting Exhibit 1B or allowing Ehlers to testify about her laboratory analysis.
 {¶ 21} Even assuming, arguendo, that the trial court had erred, we would find the error to be harmless beyond a reasonable doubt. The crack cocaine found in McDade's pocket had little, if anything, to do with Wilcoxson's conviction. The drug trafficking charge against her stemmed from her role in aiding and abetting McDade's sale of crack cocaine to Spires. Defense counsel stipulated that the substance McDade sold to Spiers, and identified as Exhibit 1A, was crack cocaine. The only real issue at trial was whether Wilcoxson had assisted McDade in this drug transaction, not whether McDade also retained a small quantity of crack cocaine in his possession. Therefore, Wilcoxson's challenge to Ehlers' testimony about the composition of the substance found in McDade's pocket is largely immaterial.[2] The fourth assignment of error is overruled.
 {¶ 22} The judgment of the Montgomery County Common Pleas Court is affirmed. *Page 10 
WOLFF, P.J., and DONOVAN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Carley J. Ingram
Michael B. Miller
Hon. Frances E. McGee
[1] In her brief, Wilcoxson attributes this testimony to detective Dennis Murphy. The record reveals, however, that the prosecutor elicited the disputed testimony from Spires. (Tr. at 49-51).
[2] The State apparently introduced evidence about the substance found in McDade's possession merely to corroborate Spires' suspicion that McDade had "pinched" some crack cocaine before selling Spires the remainder. *Page 1