OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Joseph Price, filed September 10, 2007. On November 3, 2006, Price was indicted on one count of possession of crack cocaine in an amount greater than 10 grams but less than 25 grams, in violation of R.C. 2925.11(A). *Page 2 
 {¶ 2} The events giving rise to this matter began on October 27, 2006, after a search warrant was issued by a Dayton Municipal Court Judge for a residence located at 629 Mia Avenue, in Dayton, Ohio. A confidential informant informed police that a man known as "JoJo" was selling drugs there, and in the course of the subsequent investigation, the informant completed two controlled buys at the residence and identified the seller as "JoJo."
 {¶ 3} When the warrant was executed, officers found Price inside the residence, along with a woman named Felon Mallory. Gerald Barreno had just purchased crack cocaine from Price, and Barreno was backing a car out of the driveway when the officers arrived. Officers arrested Barreno. In the course of their search of the home, officers found a bag of crack cocaine inside a brown boot in one of the bedrooms, and another bag of crack cocaine inside a box of sandwich bags on the kitchen counter. The officers also recovered two bags of marijuana from a small white table in the living room, and a plastic bag with 18 blue tablets from the stereo cabinet in the living room. The tablets were tested at the Miami Valley Regional Crime laboratory and found to be alprazolam, commonly known as Xanax. Finally, the officers recovered a handgun from underneath the living room couch, a digital scale and a sum of money.
 {¶ 4} According to Detective Gregory Gaier, who was the first officer through the door when the warrant was executed, the house, "appeared to have all the tendencies of a * * * house used solely for the purpose of selling drugs. There [were] very minimal things in the kitchen. There was no microwave, no stove * * * . There [were] no food items, no refrigerator, but * * * there was a trash bag or a trash can that was full of nothing but fast food containers. * * * The bedrooms just had minimal amounts of clothing that were scattered across the floor, no beds * * *Page 3 
* however there were a couple couches in the living room, but that was about it." The toilet in the house did not work and was full of urine.
 {¶ 5} On November 16, 2006, Price pled not guilty, and he subsequently filed a "Motion to Suppress Statements and Seizure of Physical Evidence; Request for Evidentiary Hearing." Following a hearing, the trial court overruled Price's motion to suppress. On April 12, 2007, Price filed a "Motion for an Order to the Prosecuting Attorney to Reveal the Unidentified Informant's Name, Address and Criminal Record; to Reveal any Agreement Made Between the State and the Unidentified Informant." On April 18, 2007, the State filed a Motion in Limine, seeking an order excluding any evidence related to any conversations, actions, or involvement of the confidential informant with Price or anyone prior to the execution of the search warrant. On April 20, 2007, Price filed a "Motion in Limine; Motion for Redaction in the Alternative," seeking an order precluding the State from referring to or demonstrating the Affidavit for the Search Warrant, or, alternatively, an order redacting Price's name from the Search Warrant. On April 20, 2007, Price filed a "Motion for an Order to the Prosecuting Attorney to Reveal the Unidentified name of a Witness Present at the Scene," and a "Motion to Suppress Line-Up Conducted by Confidential Informant to Identify Suspect for Purposes of Search Warrant."
 {¶ 6} Also on April 20, 2007, the trial court issued a "Decision, Order and Entry Overruling Defendant's Motion for an Order to the Prosecuting Attorney to Reveal the Unidentified Informant's Name, Address, and Criminal Record; to Reveal any Agreement Made Between the State and the Unidentified Informant and Overruling Defendant's Motion to Suppress Line-Up Conducted by Confidential Informant to Identify Suspect for Purposes of the *Page 4 
Search Warrant."
 {¶ 7} At trial, six officers from the Dayton Police Department who were involved in the raid, as well as the forensic chemist from the Miami Valley Regional Crime Laboratory who tested and identified the contraband, and Barreno, testified for the State. Linda Maddox, who lives next to the Mia Avenue address, Felon Malory, Price's acquaintance, and Marvin Woodfork, who claimed that he resided at the Mia Avenue address, testified for Price.
 {¶ 8} The jury found Price guilty, and he received a six year sentence.
 {¶ 9} Following his trial, Price filed a Motion for a New Trial, which the trial court overruled on September 27, 2007.
 {¶ 10} Price asserts six assignments of error. His first assignment of error is as follows:
 {¶ 11} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED."
 {¶ 12} According to Price, the Affidavit filed in support of the search warrant was insufficient to establish probable cause. The State responds that the Affidavit demonstrated probable cause to believe that drugs would be found at the Mia Avenue residence.
 {¶ 13} "The Fourth Amendment to the United States Constitution and Section 14, article 1 of the Ohio Constitution requires [sic] that a warrant only be issued if probable cause for the warrant is demonstrated through an oath or affidavit." State v. Robinson, Montgomery App. No. 20458, 2004-Ohio-5281.
 {¶ 14} "1. In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before *Page 5 
him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (Illinois v. Gates [1983], 462 U.S. 213, 238-239, 103 S.Ct. 2317,76 L.Ed.2d 527 followed.)
 {¶ 15} "2. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting ade novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (Illinois v. Gates [1983],462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 followed.)
 {¶ 16} "3. The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. (United States v.Leon [1984], 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, followed.)State v. George (1989), 45 Ohio St.3d 325, Syllabus by the Court."State v. Lane, Greene App. No. 07CA0014, 2008-Ohio-1605.
 {¶ 17} The affidavit herein, dated October 27, 2006, is that of David L. House, a Narcotics Detective for the City of Dayton Police Department. According to House, he was *Page 6 
contacted by Detective Braun of the D.E.A., Dayton Field Office. Braun told House that Braun's office had been contacted by Detective Tom Watson of the Logan County Sheriffs office. Watson had an informant with information on several drug dealers operating in Dayton. Braun was able to identify three subjects as possibly being the dealers the informant described, and he provided this information to House, along with a contact at the Logan County Sheriffs office.
 {¶ 18} House and other officers later met with the informant, who told them a man known as "JoJo" was selling both powder and crack cocaine from the Mia Avenue address. The informant described "JoJo" as being a black male, 25-27 years old, approximately five feet ten inches tall, weighing 175-180 pounds with a dark complexion. The informant also stated that "JoJo" has carried a nine millimeter pistol in the past and that he sometimes keeps a sawed-off shotgun in his living room.
 {¶ 19} On October 20, 2006, the officers directed the informant to telephone "JoJo," and they recorded the call. The officers then took the informant to 629 Mia Ave, checked his person for drugs or money, gave him a sum of cash, and sent him to the door. The informant was allowed to enter the residence by an unidentified male and he returned three minutes later with a quantity of crack cocaine. The informant advised the officers that once inside, "JoJo" retrieved the cocaine for him from a drawer in the kitchen. On October 24, 2006, a second controlled buy was completed following a call to the Mia Avenue residence by the informant. The informant advised the officers that "JoJo" again retrieved crack cocaine from a drawer in the kitchen. According to the Affidavit, "In addition to the information that the informant gave about `JoJo,' the informant also gave information about other drug dealers that [another detective and House] *Page 7 
knew to be true or that [they] were able to verify through independent investigation to be true."
 {¶ 20} The Affidavit further provides that House, in the course of the investigation, conducted surveillance on the Mia Avenue address and observed "pedestrian and vehicular traffic coming and going from the residence in a manner that is consistent with that of operating drug houses." The Affidavit also provides that House and another officer, on several occasions while checking the Mia Avenue address, observed two vehicles parked either in the driveway of the residence or on the street in front of the residence. One of the vehicles was registered to McKever Pitman, and the other was registered to Anna Dunson-Taylor, who lives at 632 Mia Avenue. A detective recognized Dunson-Taylor's name from a drug search warrant he served in 2004. Dunson-Taylor is Price's mother. Her vehicle was known to have been driven by Price, due in part to BMV records demonstrating Price had received a traffic citation while driving his mother's car.
 {¶ 21} In checking the Dayton Police MIS system, the Affidavit provides, a detective located two incident reports where Pitman and Price were involved, the most recent being a drug arrest incident that occurred on June 9, 2006.
 {¶ 22} The affidavit states, on or about October 20, 2006, House showed the informant a photo of Pitman, and the informant stated that he recognized Pitman as an associate of "JoJo's." The Affidavit further provides that House showed several photos of subjects he retrieved from the Montgomery County Jail photo index file, and the informant "positively identified the photo of Joseph Price Jr. as the same person who the informant knew as `JoJo' and as the same person who was selling crack cocaine and powder cocaine from 629 Mia Ave."
 {¶ 23} Having reviewed House's Affidavit, we conclude that the evidence therein *Page 8 
provided a substantial basis for the issuing judge to find that probable cause existed to issue the search warrant. House and other officers conducted two controlled buys at the residence that resulted in the purchase of crack cocaine, the purchases were accomplished by an informant who had previously provided accurate information to the officers, the informant identified Price as "JoJo," an incident report indicated that Price was present at the scene of a drug arrest on June 6, 2006, and House, an experienced detective, observed pedestrian and vehicular traffic consistent with an operating drug house. Since the probable cause requirement was met, Price's first assignment of error lacks merit and is overruled.
 {¶ 24} Price's second assignment of error is as follows:
 {¶ 25} "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO REVEAL THE CONFIDENTIAL INFORMANT'S IDENTITY AND BY GRANTING STATE'S MOTION IN LIMINE TO EXCLUDE ANY TESTIMONY OF THE CONFIDENTIAL INFORMANT IN THIS CASE."
 {¶ 26} We will first address Price's arguments regarding his motion to reveal the confidential informant's identity.
 {¶ 27} "The Supreme Court of Ohio has established the standard for determining whether the State is obligated to disclose the identity of a confidential informant:
 {¶ 28} "The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges. State v.Williams (1983), 4 Ohio St.3d 74, 446 N.E.2d 779, syllabus,4 Ohio St.3d 74, 446 N.E.2d 779, 4 OBR 196; see State v. Phillips (1971),27 Ohio St.2d 294, 272 N.E.2d 347, syllabus, *Page 9 27 Ohio St.2d 294, 272 N.E.2d 347, 56 O.O.2d 174.
 {¶ 29} "Generally, when the degree of participation of the informant is such that the informant virtually becomes a state's witness, the balance swings in favor of requiring disclosure of the informant's identity. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed. (Citations omitted.) Williams, 4 Ohio St.3d at 76,446 N.E.2d 779." State v. Bays (Jan. 30, 1998), Greene App. No. 95-CA-118.
 {¶ 30} In ruling on Price's motion regarding the identity of the informant, the trial court determined, "the informant was not present during the search that led to Defendant's arrest for possession of cocaine. The criminal charge against Defendant is not based on the informant's controlled buys. Further, this Court has already determined that the search warrant, based in part on information provided by the informant, was constitutionally valid. Finally, the Court notes that the informant is not on the State's witness [list] and will not be called [at] trial. Accordingly, Defendant's arguments supporting his motion to reveal the informant's identity are without merit.
 {¶ 31} "Based on the foregoing facts, the Court finds that the elements of Williams have not been met. Defendant has neither established that the informant's testimony will be used to establish an element of Defendant's crime nor that the informant's testimony would assist Defendant in preparing or assisting his defense."
 {¶ 32} Price directs our attention to the testimony of Marvin Woodfork, who stated that he used to reside at 629 Mia Avenue. According to Woodfork, he continued to live at the Mia Avenue house and was there on the day the officers arrived with the search warrant. He admitted *Page 10 
to getting high on crack cocaine in the Mia Avenue house "every time I could get my hands on it." Some of the crack he obtained from Dwayne Brown, his wife's cousin, who Woodfork described as a drug dealer. According to Woodfork, Brown "stored" his crack cocaine in the Mia Avenue house, including inside Woodfork's work boots, and Brown stayed at the address with Woodfork "for a week or two" after the death of Woodfork's wife. Woodfork let Brown store his cocaine there because "he was going to help me pay my rent and it was like a deal we had made."
 {¶ 33} Woodfork testified that he knew Price and met him through Price's mother, who lives across the street. Woodfork said Price, accompanied by "a young lady," appeared at the Mia Avenue address for the first time on October 27, 2006, because Price was having car trouble, and he wanted Woodfork to look at his car. Woodfork stated that he left to borrow some tools to fix the car, and when he returned, "the police was everywhere," and Woodfork left. Woodfork denied that Price lived at 629 Mia Avenue and that anyone sold drugs there.
 {¶ 34} According to Price, "Appellant should have been given the opportunity to call Mr. Brown, and the Court should have overruled the State's Motion in Limine regarding the [informant]. Appellant should have been allowed to elicit testimony from the [informant] and expose his criminal background, the deal struck with the police in providing information on Appellant. Such testimony would have been beneficial to establish Appellant's defense that someone else stayed at 629 Mia Avenue, Dayton, Ohio and had possession of the drugs that he was charged with. The Trial Court erred in not granting Appellant's Motion to reveal the [informant's] identity and in granting the State's Motion in Limine because if it was either of the two (2) men who lived at 629 Mia Avenue, Dayton, Ohio, that information would have greatly *Page 11 
assisted Appellant in preparing his defense."
 {¶ 35} We first note, Price listed Brown as a witness, and Price does not indicate why he did not call him to testify or request a continuance to do so. The trial court correctly determined that the informant's role in the matter herein ended when probable cause was established for the issuance of the search warrant; the informant did not become a state's witness. Price's concerns appear to be directed to the alleged residents of the Mia Avenue address, namely Woodfork and Brown, and Price has not demonstrated how disclosure of the informant's identity would have been helpful to him in preparing his defense. Accordingly, the trial court properly overruled Price's motion regarding the identity of the informant.
 {¶ 36} Regarding the State's motion in limine, the record reveals the trial court failed to journalize a ruling on that motion. While the jury was excused and the court reviewed exhibits for admission, the following exchange occurred:
 {¶ 37} "THE DEFENSE: Finally, the last note I have * * * wrote down based upon [former defense counsel's] motions was there was a motion in limine regarding prior interaction between the defendant and the [informant] prior to October twenty-seventh of two thousand six. The record doesn't indicate there was a ruling on that either.
 {¶ 38} "THE COURT: Any motions dealing with the confidential informant were dealt with at the motion to suppress and [former defense counsel] * * * was given broad brush to go into anything he wanted at that motion hearing."
 {¶ 39} The trial court issued a decision on Price's Motion to Suppress on March 12, 2007. The State's Motion in Limine regarding the exclusion of any evidence related to the informant's involvement with Price was filed April 18, 2007. While the trial court failed to rule *Page 12 
on the State's motion, its rulings made clear, as discussed below, that evidence regarding the informant's involvement was to be excluded. We see no error, and Price's second assignment of error is overruled.
 {¶ 40} Price's third assignment of error is as follows:
 {¶ 41} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR MISTRIAL AFTER IMPROPER TESTIMONY WAS GIVEN BY DETECTIVE SPIERS."
 {¶ 42} According to Price, "Detective Spiers improperly referred to `controlled buys' made previously involving Appellant and other individuals, before October 27, 2007, in direct conflict with the Motion in Limine granted to the State to not refer to such matters. Even though an objection was sustained with respect to part of the answer, there is no way to determine what influence those words had on the jury when they heard them."
 {¶ 43} "The decision whether to grant a mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (Internal citation omitted). An abuse of discretion means more than an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court." State v. Wilcoxson, Montgomery App. No. 22194,2008-Ohio-2871.
 {¶ 44} On cross-examination, Price asked Spiers about a second unnamed individual listed on the search warrant, and the following exchange occurred:
 {¶ 45} "Q. That individual is listed as six foot one, correct?
 {¶ 46} "A. That's correct.
 {¶ 47} "Q. * * * and twenty-seven years old? *Page 13 
 {¶ 48} "A. Twenty-two to twenty-seven years old?
 {¶ 49} "Q. * * * Are you aware of how tall Joe is?
 {¶ 50} "A. * * * I would say he's probably five eight.
 {¶ 51} "Q. Are you testifying you believe [Price and the unnamed man] are the same individual?
 {¶ 52} "A. There's a second person listed. I do not recall during the briefing where this information came from. Obviously that might have been a person that was hanging around on the porch at the time the two controlled buys was made or the one controlled buy was made."
 {¶ 53} Price objected and moved to strike, and the trial court sustained his objection and struck the reference to the controlled buys. In overruling Price's motion for a mistrial based on Spiers' remark, the trial court determined, "I don't think he went out of his way to bring that up and I think it was an answer in specific response to the question asked by defense counsel so that motion is overruled."
 {¶ 54} As the trial court noted, Spiers did not deliberately interject improper evidence regarding the controlled buys into the record but rather responded directly to Price's question regarding the second unidentified male listed on the search warrant. Price's objection to the reference to the controlled buys was sustained and his motion to strike was granted, and he did not request a limiting instruction. The trial court did not abuse its discretion in overruling Price's motion for a mistrial on the basis of Spiers' remark, and Price's third assignment of error is overruled.
 {¶ 55} Price's fourth assignment of error is as follows:
 {¶ 56} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S *Page 14 
OBJECTIONS TO THE ADMISSION OF THE SEARCH WARRANT AS WELL AS MARIJUANA, ALPRAZOLAM AND A FIREARM."
 {¶ 57} According to Price, "Appellant's original Trial Counsel had filed a Motion in Limine to not allow introduction of the affidavit or warrant, or in the alternative a redaction of Appellant's name from the same to avoid undue prejudice. The testimony surrounding the above four items and the items themselves had their probative value substantially outweighed by unfair prejudice to Appellant because he was only charged under Count One of the Indictment for possession of Crack Cocaine. Allowing the jury to consider other illegal substances and a firearm had no bearing on the charge at issue because the evidence was (1) not relevant to the case as Appellant was not charged in connection with those items and (2) it was too prejudicial, even if found to be admissible, because there was no connection between the seized evidence and Appellant."
 {¶ 58} Price argues alternatively, if we find no error "in the admission of the testimony and evidence, Appellant would argue that trial counsel was ineffective for failing to make a timely Motion in Limine regarding the drug and gun testimony and exhibits."
 {¶ 59} We note that the trial court did not journalize a ruling on Price's motion in limine regarding the admission/redaction of the search warrant. At trial, defense counsel made "just a general objection" to the admission of the warrant, which the trial court overruled. The affidavit was not admitted.
 {¶ 60} "The admission or exclusion of evidence is a matter resting within the sound discretion of the trial court, and its decision in such matters will not be disturbed on appeal absent an abuse of that discretion." State v. Wilson, Montgomery App. No. 22120, 2008-Ohio-4130. *Page 15 
 {¶ 61} R.C. 2925.11(A), pursuant to which Price was convicted, provides, "No person shall knowingly obtain, possess, or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "`Possess' * * * means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession of a drug may be either actual physical possession or constructive possession. (Internal citation omitted). A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. * * * In terms of `knowing possession,' knowledge must be determined from all of the facts and circumstances surrounding the incident." (Internal citation omitted). State v. Holloway, Clark App. No. 04CA0070,2006-Ohio-4797.
 {¶ 62} "Although relevant, evidence is not admissible if its probative value is outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid. R. 403(A). "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of *Page 16 
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(B).
 {¶ 63} "A court of appeals may not reverse a judgement of a lower court unless the error is prejudicial. (Internal citations omitted). The ordinary test of whether error is prejudicial is whether it affects the substantial rights of the accused. (Internal citation omitted). Any error which does not affect the substantial rights of a party must be disregarded. Crim. R. 52(A)." State v. Young (May 1, 1998), Montgomery App. No. 16471.
 {¶ 64} Regarding the various items of contraband found in the raid, it is common knowledge that in locations where drug activity is prevalent, drugs, weapons, scales and money are also present. This evidence was relevant and admissible, pursuant to Evid. R. 404(B), to prove Price's knowing, constructive possession of the crack cocaine seized in the raid. All of the facts and circumstances surrounding the raid, including the amount and variety of drugs found, the weapon, the scales, and the unlivable condition of the house permit a reasonable inference that Price, who had been identified as someone selling drugs at the Mia Ave. address, constructively possessed the crack cocaine found there. Further, the probative value of the contraband was not outweighed by the danger of unfair prejudice, pursuant to Evid. R. 403(A). Those matters are largely avoided herein. During cross-examination of the State's witnesses, Price established that the marijuana, pills and weapon found in various locations throughout the residence were not otherwise linked to Price. See State v. Williams, Montgomery App. No. 20271,2005-Ohio-1597 (holding numerous drugs, electronic scales and two loaded firearms found in defendant's apartment were admissible where defendant was charged with possession of cocaine, possession of heroine, and attempted tampering with evidence). *Page 17 
 {¶ 65} Having determined that the contraband was admissible, we will address Price's alternative argument regarding his counsel's alleged ineffectiveness for failing to file a liminal motion seeking its exclusion. "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). State v. Mitchell, Montgomery App. No. 21957, 2008-Ohio-493.
 {¶ 66} We cannot say Price received ineffective assistance for his counsel's failure to file a liminal motion to exclude the contraband. The evidence was clearly admissible, and counsel's failure to seek its exclusion ahead of trial does not fall below an objective standard of reasonableness such that the outcome of Price's trial would have been different, had a motion in limine been filed.
 {¶ 67} Regarding the search warrant, we conclude that its admission, without a limiting instruction, was error, but the error is harmless. The warrant identifies Price as "Joseph E. Price Jr. aka. `JoJo', BNM, 27," and provides his date of birth and social security number. As we *Page 18 
have previously noted, "In a criminal prosecution in which evidence has been obtained by use of a search warrant, the State may have a legitimate interest in acquainting the jury with the fact that the search was conducted pursuant to a warrant, in order to avoid any possible implication, in the minds of the jurors, that the search was unlawful or unreasonable. This interest can be fully satisfied, however, by asking the testifying police officer whether the search was conducted pursuant to a search warrant, and eliciting an affirmative response. There is no legitimate need to parade the warrant before the jury, with the issuing judge's imprimatur that there is probable cause to believe that the defendant committed the offense and that evidence of the offense can be found at the specified location." State v. Hughes (Sept. 17, 1999), Montgomery App. No. 17482, fn. 1. There is a risk that the jury might conclude that Price is a person of bad character and for that reason alone is guilty of the charged offense. See State v.Williams (1996), 115 Ohio App.3d 24, 684 N.E.2d 358.
 {¶ 68} While the court erred in admitting the search warrant as it did, the evidence against Price was overwhelming, and the error is harmless. Six officers testified regarding the raid on the Mia Avenue address. Barreno was arrested in the driveway, having just purchased crack cocaine from Price. While three witnesses testified on Price's behalf, the jury clearly found their testimony not to be credible. Given the sum of evidence against him, the admission of the search warrant did not affect Price's substantial rights, and absent its admission, the outcome of the trial would not have been different.
 {¶ 69} Price's fourth assignment of error is overruled.
 {¶ 70} Price's fifth assignment of error is as follows:
 {¶ 71} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A NON-MINIMUM *Page 19 
SENTENCE WHEN HE HAD NO PRIOR FELONY CONVICTIONS AND HAD NOT PREVIOUSLY SERVED A PRISON TERM."
 {¶ 72} "Pursuant to the Supreme Court's mandate in [State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856], trial courts now have full discretion to impose any sentence within the statutory range, and are no longer required to make findings or give reasons before imposing maximum, consecutive, or more than minimum sentences." State v.Nunez, Montgomery App. No. 22208, 2008-Ohio-3376.
 {¶ 73} Price was convicted of a second degree felony that carried a mandatory sentence. R.C. 2925.11(C)(4)(d). The penalty for a second degree felony is a prison sentence of two, three, four, five, six, seven or eight years. R.C. 2929.14(A)(2).
 {¶ 74} According to Price, the trial court "erred in imposing a non-minimum sentence upon Appellant and in referring to facts not considered by the jury."
 {¶ 75} The trial court allowed Bishop Richard Cox of the Southern Christian Leadership Conference to speak on Price's behalf before it imposed sentence. Price then argued to the trial court, "My name was not to be on the search warrant to six twenty-nine Mia due to the motion in limine filed by the prosecutor that was granted and the affidavit was totally hearsay and denied due process of law and personally accuse me of a crime and I never got a chance to confirm in open court."
 {¶ 76} The trial court responded to Price's remarks as follows before imposing sentence:
 {¶ 77} "* * * There are a number of people here for your trial. I'm sorry that they weren't here for the motion to suppress because as the lawyers know but individuals don't know the nuts and bolts of a search warrant do not come up in trial. The affidavit did not go to the *Page 20 
jury. They had no information of what was in that search warrant, but your attorney questioned the police officer in great detail and they talked about the basis for that motion to surpress [sic] and I wonder if all of your supporters understand the surveillance on that home. The phone calls where you were talking with other people selling drugs. You got a fair trial. It's not for me to decide what the facts are in the case when you go to trial. But for a motion to suppress, it is for me to decide whether something should be suppressed or not. So in this case I heard all of the facts that went into the search warrant, the things the jury didn't hear and there was a lot of information about you selling drugs out of that house on Mia Avenue. Now when it came to trial the jury didn't hear that and you know, whether you are convicted or not is not for me to decide. * * * You are facing a mandatory sentence. You have never once admitted you did anything wrong. Everybody is picking on you. You are selling drugs to the same young black men that the [Southern Christian Leadership Conference] and other community organizations and churches are trying to keep from those. So when you come in here and act upset about it, it bothers me because you are the one that's tearing down a lot of other young men who should be in school, working and having good lives in this community. So I can't discount what you did. You were a drug trafficker. You were a drug seller and under the laws of this state you require a mandatory sentence and that's what I'm going to do. * * *." The court indicated that it considered the purposes and principles of sentencing (R.C. 2929.11), and imposed a six year sentence.
 {¶ 78} The trial court allowed Bishop Cox to speak on Price's behalf, responded to Price's comments regarding the search warrant and the affidavit, considered the relevant statutory factors, and imposed a sentence within the statutory range, and we find no error in the *Page 21 
trial court's imposition of a six year sentence. Price's fifth assignment of error is overruled.
Price's sixth assignment of error is as follows:
 {¶ 79} "THE TRIAL COURT ERRED BY FILING AN INCORRECT VERDICT ENTRY, CITING A CONVICTION DATE OF JANUARY 4, 2005."
 {¶ 80} Price asserts, and the State concedes, that the trial court's two verdict entries, filed on August 22, 2007, incorrectly indicate conviction dates of January 4, 2005. Our review of the record reveals that one "Finding Entry" does set forth an incorrect date of conviction. Therefore, the sixth assignment of error is sustained. The matter is reversed and remanded for the limited purpose of correcting the date of conviction indicated on the "Finding Entry" from January 4, 2005 to August 17, 2007, pursuant to Crim. R. 36. The judgment is affirmed in all other respects.
 BROGAN, J. and WALTERS, J., concur. *Page 1